The 4th District Appellate Court of the State of Illinois has reconvened. The Honorable Robert J. Steigman presiding. Thank you, Mr. Bailiff. Our next case up this afternoon is 424-1013, People v. Brandon R. Walker. I'll ask counsel for the appellant. Please identify yourself, sir. Anthony J. Santello for the appellant. Okay. Counsel for the appellant, please identify yourself. First name Allison Page, last name Brooks for the people. Thank you. Mr. Santello, on behalf of the appellant, you may proceed with your argument at this time. Good afternoon, Your Honors, opposing counsel, and may it please the court. Like I said, my name is Anthony J. Santello, and I represent Brandon Walker in this appeal. The trial court abused its discretion by finding that Jones could invoke her Fifth Amendment privilege at Walker's trial. Um, Jones's agreement to testify at Walker's trial as a term of her plea agreement effectively waived the Fifth Amendment privilege and allowed defense counsel to call her and question her. This is analogous to a situation where a witness would testify on direct and then try to raise the Fifth Amendment privilege on cross-examination. The underlying... So that, counsel, you have a situation where a witness on direct examination has given up any claim of Fifth Amendment protection by testifying and can't assert it on cross-examination. How is it at all similar? The reason that it's similar and that we assert that it's similar is that the underlying policy reason for that situation, Your Honor, is that a witness cannot partially waive the Fifth Amendment privilege under Illinois law and cannot testify to the benefit of one party, but not testify to the benefit of the other party or provide facts in response. I think that the policy consideration underlying that rule is the same as it would apply in this situation, which is a unique circumstance, but still involves a situation where the witness provided a benefit to the state by entering the plea agreement and then is refusing to also testify to any facts that would be sought by the opposing party. She didn't testify as a state's witness, did she? She did not testify as a state's witness, Your Honor. I do think that if there's a gap in the law here, I think that is due to this being a unique factual situation, and I do mean unique in the most literal sense of the word. Jones did enter the waiver here. That waiver is considered to have waived the Fifth Amendment privilege, and I think the underlying factual consideration, or excuse me, the underlying policy consideration would support that. Again, with the analogy that this is similar to a situation where a witness tries to affect a partial waiver, that can't be the case here. However, I think if this court disagrees with that, the trial court still abused its discretion because its finding that Jones could invoke her Fifth Amendment privilege still ran counter to Fifth Amendment principles in Illinois law. A witness does not or cannot claim the Fifth Amendment privilege to avoid taking the stand totally. The witness raises the Fifth Amendment privilege in response to direct questions. Accordingly, defense counsel should have been allowed to ask questions to Jones, and if she had reasonable cause to believe those questions were incriminating, then she could have raised the Fifth Amendment privilege and the trial judge could have made the determination as to whether the privilege still applied. Is this a procedural issue you're raising? In other words, to require Jones to take the witness stand and then in response to defense questions assert her Fifth Amendment privilege, refusing to answer those questions? I do think that the trial court's procedure here was an error and part of the abuse of discretion. I think that the waiver also communicated to defense counsel that he had no reason to believe that Jones would invoke the Fifth Amendment privilege at the point when he called her to testify. So this is a situation where the witness is saying at the trial when this whole issue came up and to whether Jones would testify or not, Jones says, I refuse to testify and I wish to exert my Fifth Amendment rights. The defense counsel at trial will tell the court, well, wait a second, judge, you were entitled to put her on the witness stand and force to specifically do that in response to the questions we asked. Did that come up? No, your honor, but I don't think the defense counsel followed the procedure correctly either. One of the underlying rules of this court is we're never going to base, excuse me, we're never going to reverse a trial court based upon an argument the trial court never heard. You're now arguing to us the trial court committed error by not requiring Jones to take the witness stand and assert her Fifth Amendment right in presence of the jury in response to each individual question. Am I correct that there was no such request made by defendant at trial? At the point when counsel that calls for yes or no answer, then you can explain your answer. I think it's something of a yes or no, your honor. I think it's a little bit of both. Defense counsel at trial said judge, we're entitled to put her on the witness stand and make her exercise the Fifth Amendment right from the witness stand. Is that what he said? The parties did say that Jones should take the stand to invoke the privilege specifically, but that was not in front of the jury, which is why I think it's a little bit equivocal. But to the point where she did not testify in front of the jury, then I think that that is the case. And you are correct with that, your honor. But I don't believe the Fifth Amendment privilege just allows her to be incriminating questions. And I think that the error from the trial court was that it found that Jones could invoke the Fifth Amendment privilege. And I think that is consistent with the argument we did put forward in the opening brief. The Fifth Amendment privilege here should have been, excuse me. I think that defense counsel believed that the privilege had been waived. I think defense counsel did make that argument. I think that defense counsel did try to did establish that Jones had essentially changed her mind between entering the plea and being called by defense. I think that Jones, when she was on the stand, was pretty candid in saying that she was not aware that she could invoke the Fifth Amendment privilege at the time she took the plea. And then she learned about that later. That is similar to a situation or I think is, pardon me, your honor. I think that that is similar to a situation where a witness is unilaterally modifying the plea agreement or is showing maybe some hesitancy in wanting to testify. I think the trial court did admonish Jones in such a manner as to really motivate her or lead to the results of her raising the Fifth Amendment privilege. And I think there were non-incriminating matters that Jones validly could have been asked about that would have been corroborative of Walker's claims of his statements about how often he was at the house and how often he saw NJ. And I think would have been corroborative of some of Walker's actions that were not incriminating to Jones in any extent, such as Walker's claim that he went out or that he gave Jones money to buy vitamins and Pediasure for NJ on the advice of the DCFS agent. So I think there was non-incriminating matters here. I think that that this court either should find that the waiver or the, excuse me, find that the plea agreement effectuated a full waiver and allowed Jones to testify or that at minimum that a plea agreement include the defendant as a beneficiary to this contract between the state and Jones. You know, your honor, I don't know if in the, or I'll put it this way, your honor. I don't think that it's contemplated that a third party would be a beneficiary in this situation, but the position of the defense is that in so far as plea agreements are construed similar to contract law, it's also tempered by the constitutional and other considerations of criminal law that really run counter or different from commercial contract law. And I think here you are constitutional right of the defendant was implicated by the trial courts accepting Jones's claim that she doesn't want to testify and to exert a fifth member, right? Well, I think that I do think that there's a few things that support Walker's claim here that, and so far that, you know, contract principles would undergird of the plea agreement. And it is, you know, tempered by these considerations that this isn't exactly a pure contract situation between commercial parties. And I think it can be said that Walker acted in essentially a reliance interest of the state, believing that the state was going to call Jones up until the morning of December 11th, because not five days prior, the state said it intended to call Jones. And on December 11th, the day that the trial began, the state submitted a witness list that included Jones. I see I'm running a bit short on time, your honor. So I just want to conclude on the first issue and say, I think there was an error here and that the error was not harmless. And I will also address the harmless error issue in relation to the second argument. The state cited the Bowman case in the federal court of appeals. Why doesn't that apply here? Uh, your honor, I don't think that Bowman applies for two reasons. The first is my understanding from reading the Bowman case is that the witness in that case was on the stand and claimed the privilege. So I do think there is a factual distinction here. And the second is, I don't think that Bowman, I think, excuse me, I think the principles of law underlying Bowman and underlying Illinois law seem to be different from my reading, which is that there are Illinois courts of review have said that there are other considerations beyond contract law that would apply here. And I think those situations apply to Walker's case, where, as I said, he's acting on a reliance interest that the state is going to do what it said it did and call Jones to testify. And I think that, um, both the state and Jones indicated that they, this was the agreement in and of itself. And, uh, I think for the essentially, pardon me, your honor, I think Walker should have been allowed to present his witness in his defense. And then again, if Jones believes she had a reasonable cause, uh, to raise the fifth amendment privilege, she could have done so, um, under questioning. So I think that that is a distinction from Bowman. I think that Illinois law runs different. Um, and I think that this wasn't abuse of discretion by the court or alternatively ineffective assistance of counsel where defense counsel should have moved to continue at the point before trial when the state said it was going to, uh, admit these text messages without calling Jones to the stand. Well, in what sense, uh, would that have made any difference counsel? What, what, what would be the, assuming that that would have been something trial counsel could have done? What is the prejudice you're showing? I think that the prejudice, um, and so preliminarily the text messages to the stand does not have to do with the issue. And so far as that's when defense counsel first appeared to learn that Jones would not be called to the stand was that morning, but the prejudice I hear, excuse me, the prejudice here, I believe relates to Walker's credibility, the process by which the jury would reason from this evidence to a finding of guilty or not guilty necessarily includes a determination of Walker's credibility. It must include that. And we know this because the state, or at least the trial prosecutor did not contest or did not dispute the evidence that Walker was outside of the house for large periods of time. The real question of the case, um, the kind of the overarching theme is how much did Walker know? And the only witness that was able to provide or corroborate Walker's claims about him, not just being out of the house, but not seeing NJ for long periods of time for days at a time and not having general awareness as to some of the things going on in the house would have been Jones. So there is prejudice here because the only person who would have testified to Walker's knowledge, other than Walker himself would be Jones. Um, and I think that is as well. So I have some very point you just made about what Jones could have said. In fact, incriminating to Jones, if this were things she were talking about. No, I don't, I don't believe so. Your honor, I think specifically as to the question of, Walker himself. Let me be more clear. There are only two people responsible for the death of NJ in this case. It's Jones or Walker or both. And to the extent you're saying, uh, Jones could have talked about more time. She was alone with NJ than Walker. And that would have helped Walker. Why isn't that incriminating testimony to Jones? It's not incriminating testimony because the state, and you can see this in its closing argument is that, uh, and I'm, I'm trying, I'm paraphrasing the state here as that every time Walker left the house, he knew exactly what Jones was doing. He knew exactly the condition of NJ and he knew exactly what was going on. So that's, that's why it's not incriminating here is because Jones was charged for the same conduct, um, and was, uh, did enter the guilty plea. And her statement says to what Walker, um, knew and into how much he saw what was going on in the house or going on to NJ would not have further incriminated her, uh, from all speculative counsel. In fact, there's no offer of proof made as to what Jones would have said. And, uh, the defenseman permitted the caller to the stand. Is that there's no offer of proof. Your honor, um, the, the defense council did submit documents that were admitted by the trial court for purposes of appeal. So we do know that there are some things that, um, defense counsel would have asked about in relation to some of these videos that were admitted. Uh, however, I, the defense position is also that defense council, uh, should have been permitted to ask the questions and the fifth amendment does not disallow, um, asking, uh, questions to the witness. That's, that's the defense position on appeal and where defense believes that there was this abuse of discretion where enough evidence to support finding of an abuse of discretion. Go ahead. Um, so I'll move on to the second issue. Pardon me, your honor. I'll move on to the second issue here and say that this court also can and should find that ineffective assistance occurred where defense counsel failed to offer lesser included offense instructions on the event, um, on the offensive involuntary manslaughter. Uh, as I said earlier that the real question of, of this case, um, not on appeal necessarily, but the overarching question is what did Walker know? Um, and I think that there was evidence that was admitted at trial that showed that Walker would have acted, excuse me, acted recklessly, not knowingly, and would have allowed the jury to find him guilty of only the lesser included offense of involuntary manslaughter. Does the record show who was involved in an analysis of this or discussion as to whether the defendant was involved or ever raised an issue on it? The record does not show that your honor. Um, there's two points. The first is that there is a post trial motion where the defense counsel raises a jury instruction claim, but never says what instructions, um, defense counsel would have offered. Uh, but the second overarching point, uh, is that defense counsel operated under mistake of law here and defense counsel took an all or nothing approach under this mistake of law, which was defense was repeatedly raised by defense counsel. And that is that parental, excuse me, that guardianship legal guardianship of a child would trump parental responsibility. Defense counsel on appeal submits that that is an incorrect statement of law. And that is not a basis to take an all or nothing approach. And therefore it would not be trial strategy, uh, to fail to provide the NF, excuse me, involuntary manslaughter, lesser included offense instruction. What if there was a back to discussion between the defense attorney and defendant concerning whether to seek an involuntary manslaughter instruction in this case? I think as a hypothetical, if there was a discussion on the record for that case, then I didn't say on the record, as you know, counsel, defense attorneys and their clients typically don't put on the record their strategical decisions. Yes. What if such a conversation in fact occur? Uh, well, your Honor, I, I take your question. I mean, is there grounds that maybe this would be better suited to a post conviction claim? Weeding my mind council. I think that there's enough information on the record to decide this, excuse me, to decide this issue now, um, on the basis that defense counsel did operate under a mistake of law, because even if that conversation existed, defense counsel was still, um, based on his statements and actions that we do have and do know forwarding this all or nothing approach on the basis, again, of the incorrect statement of law that guardianship would Trump parental responsibility. And it's not just that defense counsel made an argument that that was Brandon Walker's knowledge, or that was what Brandon Walker thought defense council very specifically told the jury quote, we all know that guardianship Trump's parental responsibility. That's not the case. And that's not a basis, um, to go forward on an all or nothing approach there. And because there is some evidence of recklessness here, there's evidence in that Walker invited friends over to his house, had friends within his house within two weeks before, or about two weeks before NJ died, that he was working with DCFS that he told, uh, that he testified at his trial that he noticed that NJ's weight was going down in January, himself personally discussed this issue with his lawyer and said, no, I don't want any involuntary manslaughter instruction. I want to go for broke. We would still be appropriate to reverse on this record because we don't know about that. I think it would be your honor. And it's because what we have on the record is again, the defense's position is that you, the, the trial strategy presumption is overcome where there, the all or nothing approach was taken under this mistake or law. And that is sufficient to find that there was deficient performance in failing to, um, submit the, uh, the lesser included offense instructions. And so just to read the rebuttal, uh, I'm sorry, uh, judge, justice, Kevin, did you have a question? If I could, yes, please counsel. Uh, you seem to take issue with the all or nothing strategy. Can you, can you explain what, what the problem with the all or nothing strategy is between counsel and the defendant? I think the problem with the all or nothing strategy here is that it was based on a mistake of law. You're on it. That's, and that is specific to what defense counsel said, um, on the record and at trial that it was, that it was, uh, based on this idea that guardianship would trump parental responsibility. And the defense essentially at trial raised the guardianship issue, almost akin to an affirmative defense. Um, that's not what the law says. And I don't believe that that was sufficient to allow for an all or nothing approach. And I think when a defense attorney acts under such a mistake of law, that taken all or nothing approach becomes unreasonable and grounds for this court to conclude that, uh, the trial presumption of trial strategy is overcome. And I think this court should do that in this case. I'll just note that your argument seems to assume that trial counsel made that call, that the defendant was not involved and saying, let's roll the dice and go forward without that instruction. I think that defense counsel would have the, uh, strategic choice of, of a strategy to take, not necessarily the instructions to admit, but the strategy to take. And I don't believe that this was an appropriate strategy. And I think there was evidence that would support, um, and the, uh, lesser included offense and allow the jury to reasonably, um, acquit Walker of the greater offense and get victims solely of the lesser. And I think that that supports reverse and remand for the trial. Very good. Thank you. Thank you, Justice. Okay. I apologize, Justice Kavanaugh for not saying that you had a question. Okay. Then, uh, Ms. Brooks, on behalf of the happily, you may make your argument at this time. Thank you, your honors. May it please the court and counsel. I would like to start with the defendant's claim that the attorney was defense attorney was ineffective for failing to request a continuance. And I noticed that even on appeal, the defense is pressing the view that there was in fact, um, an abuse of discretion for the trial court to deny the claim of privilege against self incrimination made by the witness, Stephanie Jones. But that seems to be contradictory to what the defendant would be arguing under ineffective assistance, because ineffective assistance would require the defendant to show that no reasonable attorney, like no competent attorney. I mean, every other competent attorney would have said, we've got to wait. The privilege absolutely applies. If it's not, if the witness is not called by the prosecution that we would want to call the witness and, uh, that we would not have the ability to overcome a claim of and therefore the trial must be continued. The defendant has to show that every reasonable attorney would have said that to the court, but now even on appeal, they're sort of saying that we'll know that the privilege shouldn't have been honored. Um, so this seems to be directly contradictory to the, their initial argument here. Um, so that's why they, at least the ineffective assistance claim should be, um, denied, especially because that's eminently a trial strategy issue, particularly where if Jones has no existing relationship with the defendant by the time of trial and potentially faces up to a hundred years in prison with no appeal and no post-conviction petitions forthcoming, um, at that point, there's not, there's no ability to control her. And without any way of knowing exactly what she would say, it could be an outright refusal to testify. State has no real power to punish her any further with contempt, or she could just perjure herself and hurt the defendant out of spite. Uh, any attorney would have to consider these possibilities, uh, in determining whether to ask for a continuance of trial in order to have her allowed to take the stand. And she would be at the ultimate wild card and lose canon here. And I don't think any, you can't say that every competent attorney would have wanted to put her on the stand in favor of the defense here. Um, so, um, with respect to the main argument though, the state relies on the federal case of Bowman, um, which is directly on point here because, um, a contract won't be forced by the parties unless the contract itself makes clear that a third party is an intended beneficiary. And so here there's also, um, testimony under Bowman just this year would have been incriminating to the witness because she had yet to be sentenced. And also Jones still had potentially the ability to still withdraw her plea. So that lasts 30 days after to file a motion to withdraw plea, which potentially could have been granted. So therefore, um, this court would essentially be making new law, apparently be the first, um, I could see in the country that would be holding that a witness in this situation, um, could be forced to testify over a valid claim of privilege. Um, despite the fact she hasn't been sentenced, despite the fact she could still withdraw her plea. And despite that the third, uh, third party is not an intended beneficiary of her contract. Um, the, the, the right to, to have witnesses testify in your defense, uh, does not permit you to call people over a valid, uh, you can call them to court, but you, they, you can't force them to testify over a valid claim of privilege. And here I think any attorney would have advised her, um, what is your name? Stephanie Jones, uh, what's your relationship to NJ? And then she would have to say your honor, um, I would respectfully invoke my rights privilege against self-incrimination under the fifth amendment, because even admitting she was the mother of NJ, I think was incriminating, uh, based on the facts of the case. So, I mean, there's really nothing that she could have testified to that would have been non-incriminating. Um, and that's why the procedure, the idea that she could somehow be called before a jury, knowing that she would answer fifth amendment to every question, uh, judges would not put her on the stand just to take the fifth amendment. So, to plead the fifth amendment. So, if this was done outside the jury and she takes the fifth to every single question, the procedure wouldn't have made any difference. She wouldn't have been testifying. Um, so I, there, there doesn't seem to be any reason to reverse on a procedural ground. And, uh, the defense, all the cases rely on either, uh, defendants who are, um, uh, they pleaded guilty or something, they refuse to testify. Well, if they're charged with contempt, they can't use their fifth amendment right as a reason not to testify if they're charged with contempt or the prostitution called a witness. Here, the defense called the witness was a third party, not a beneficiary or other situations where a witness like gave testimony at the trial and then just refused to testify any further. And that's a partial waiver and that's not allowed. So, all the other cases are just distinguishable. In this case, this court apparently would be the first to hold, um, that the fifth amendment does not apply in this situation. Um, with respect to, uh, harmless error, the defendant did have a duty to care and protect, uh, when an eight-year-old boy gets down to 30 pounds and over a course of months of lack of valid nutrition, uh, proper nutrition and care, uh, and according to defense-owned admissions to police, uh, that NJ could barely walk and that he also was told police his only reason not to go to the ER was to avoid a call. And in fact, his idea that his guardianship, lack of guardianship, it didn't stop him from taking the brother to the doctor, uh, the other brother. Um, so, I think it's, it's obvious in this situation that his own, under his own omissions, uh, he's guilty of the, of the first degree murder, but also accountable for Jones's conduct because the evidence of messages between them shows that he, he had a, an intent, uh, to, to inflict, uh, harm on the boy, um, shared that intent with, um, Jones. Even if she were the primary perpetrator, um, he still shared in that intent and also knowing, just knowingly leaving him in custody in his declining condition, knowing that she's abusing him, I mean, that itself gives rise to accountability. So, um, this is not at all a closed case. And so, um, that's why the, the, the conviction should still be affirmed. And with respect to involuntary manslaughter, the Moore case shows, um, here, just like the record does not show whether a defendant personally made the decision. And so, for this is not an issue of ineffective assistance of counsel because whether to tender an instructional lesser included offense is for the defendant to make, not the counsel. So, because that's a different situation than other decisions that, that, that counsels typically get to make themselves, um, after consultation with the defendant here, after consultation with counsel, defendant gets to personally make that decision. And so, without the record showing whether defendant in fact personally decided and what sort of advice that counsel might've given, all that dehorses the record, that means this would definitely be a case that would be more appropriate for post-conviction if this court didn't find it, um, easier and more appropriate to simply reject on the grounds of insufficient prejudice, which would be the proper, um, case, proper route to follow. Because here, um, there's a lack of evidence of recklessness. So, it's not even clear that the, the judge and the court would have granted an instruction had it been requested. Um, involuntary manslaughter, one reason why the defendant gets to personally make this sort of this, um, decision is because it concedes that the defendant caused the death. And, and, and so admitting that there's sufficient evidence the defendant caused the death is a powerful concession. And to ask for that instruction in this sort of situation where there's really kind of a small, but, I mean, significant, but still relatively small difference between involuntary manslaughter and first-degree murder, that is in the, the nature of the knowledge and the risk of harm. So, the difference is between strong probability of great bodily harm or death or substantial risk of death or great bodily harm. And strong probability and substantial risk, it doesn't take too much to distinguish between the two. So, if you're admitting that you knew that he was dying and you still didn't get him care and you didn't give him food. In fact, you knew that this door was locked at night. You knew the refrigerator was locked and you didn't help him. And I just, that would be a powerful admission is like, well, yeah, you can see he can barely walk and he's only 30 pounds. How is that not strong probability of death or great bodily harm? It only has to be great bodily harm. And you know, he's suffering great bodily harm because he can't barely walk. So, he's already been suffering great bodily harm because of his and Stephanie Jones' lack of care and nutrition. And so, I mean, this is not a situation where there was some reckless failure to obtain medical care because the acts include the failure to provide nutrition over months. So, it's not just simply one reckless act that can be cited here as the basis for why this boy died. And so, there would be no reasonable probability of acquittal either, no prejudice. The jury even found exceptionally heinous, brutal or heinous behavior indicative of one cruelty. So, it's not, there's no reasonable probability here that if the jury got another option, they would have said, nope, actually, you know what? No first degree murder either. Let's go with involuntary manslaughter. This was one of the most heinous cases I've ever seen in my over 25 years of law. And there just seems to be no probability the jury could have done anything different than what it did. So, for those reasons, I would request this court to affirm and thank you and entertain any questions. Thank you, Ms. Brooks. Mr. Sandella, you may make your rebuttal. It's fine. Thank you, Your Honor. So, I'll move quickly. To start on the ineffective assistance claim from the first argument, the alternative claim, the state says that this is contrary to our main argument about abusive discretion. I don't believe that's the case because I think the waiver has, if this court, you know, reaches the ineffective assistance claim and considers it. The waiver, or excuse me, the plea agreement has import to the ineffective assistance claim because it means defense counsel did not have reason to believe that, excuse me, that Jones was going to claim the Fifth Amendment privilege when he called Jones to testify. I think there are sufficient grounds from the record to conclude that Jones could have testified and that there was non-incriminating material for her to testify to. There was material in this case that was not central to her case and would not lead to the risk of further criminal penalty, whether that's related to the motion withdrawal plea, sentencing, or further criminal charges. I think, excuse me, the point of the ineffective assistance claim from the first argument is that if it's true that there were grounds for Jones to properly invoke the Fifth Amendment privilege, then counsel should have had knowledge of and should have been aware of the law and moved to take action by moving to continue the trial at the point when he learned that the state was not going to call Jones to testify. I do think that... He should have done what when he learned that? Moved to continue the trial so as to ensure that he could call Jones to testify at the point when the Fifth Amendment privilege would not be able to be invoked by Jones. Moving on to harmless error, specifically, as I said in the opening portion of my argument, the case here hinges on credibility and whether or not the jury would accept Walker's credibility as to what he had knowledge of. I think that, again, the state put forward at closing argument, and I think similarly puts forward here, that Walker knew exactly what was going on at the house, knew exactly what NJ's condition was, and knew exactly what Jones was doing, knew exactly everything that was going on upstairs with the refrigerator, with the door. But I think that the error, excuse me, I think the reason why the error is not harmless is because the state's argument here assumes Walker's knowledge, assumes that there is knowledge, exact knowledge that Walker has of everything that Jones is doing at the house, and that he's complicit or part of that. I don't think that that's the case. I think that the jury makes a credibility determination here, and the jury could make that determination on knowledge or not. To move on to involuntary manslaughter, I think the state briefly said that there was no evidence of recklessness. The defense disputes that. Again, there's Walker's own testimony. And I think also Walker's statement in his police interview that he said, I guess I didn't know exactly how bad things were. That strikes to the very heart of the definition of recklessness, a conscious disregard that circumstances exist or that a result will follow. I think there is evidence here that supports a finding of recklessness, that the jury could have used to find recklessness. And I think the state is parsing out the definition of knowledge versus recklessness. That's an argument better suited for a jury to determine. I think that there was evidence here that the jury could look at and reasonably conclude that there was not knowledge to support finding a first degree murder, but that there was only recklessness for a finding of involuntary manslaughter. So unless your honors have further questions, we would ask that this court reverse Mr. Walker's convictions or a man for new trial, either on finding the trial court made an abuse of discretion or under the involved, excuse me, or finding that there was ineffective assistance of counsel. Thank you. Thank you counsel. Before recessing, I want to mention that this was a very difficult, very unpleasant case. And I want to thank both lawyers for your well-done briefs and for your well-done arguments on these difficult facts. It's a service to this court and you both have done very well and I thank you. The court will take this matter under advisement, issue a decision in due course, and we'll stand in recess.